UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL CHAMPION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-1800** |
| **GLOBALSANTAFE DRILLING COMPANY** | **SECTION "K"(4)** |

### ORDER AND REASONS

Before the Court are several motions in this maritime personal injury suit. Defendant GlobalSantaFe Drilling Company ("GSF") has filed a Motion for Partial Summary Judgment (Rec. Doc. 73) ("GSF S.J. Mot."). Plaintiff Daniel Champion has opposed this motion. (Rec. Doc. 76) ("Opp. to GSF Mot."). Defendants Tidewater, Inc. and Zapata Gulf Marine Operators, LLC (collectively "Tidewater")[1] have also filed a Motion for Summary Judgment (Rec. Doc. 72) ("Tidewater S.J. Mot."), as well as a Motion In Limine to Exclude the Expert Testimony of John Manders (Rec. Doc. 71) ("Expert Mot."). GSF filed a motion joining entirely in Tidewater's Motion in Limine. (Rec. Doc. 74). Plaintiff has also filed oppositions to these motions. (Rec. Doc. 77) ("Opp. to Tidewater Mot."); (Rec. Doc. 78) ("Expert Opp."). For the following reasons, this Court will deny the motions for summary judgment, and it will grant in part and deny in part the motions to exclude expert testimony.

---

[1] Tidewater, Inc. answered the Complaint on behalf of both itself and Zapata Gulf Marine Operators, LLC. *See* Tidewater Answer (Rec. Doc. 10).

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted. Plaintiff Daniel Champion alleges that he was employed by GSF as a roustabout aboard the jack-up drilling rig Adriatic III. Complaint ¶ V (Rec. Doc. 1) ("Compl."). On January 29, 2006, Plaintiff was aboard the supply vessel M/V President Tide, which was owned by Zapata. Plaintiff was backloading drill pipe from Adriatic III to the M/V President Tide with another roustabout, Waylon Symmank. Plaintiff and Symmank began loading the drill pipe around 6:30 a.m. on January 29th. It was raining and the waves were approximately 5-8 feet in height, although the Plaintiff's expert asserts that the waves could have peaked at 12-17 feet in height. Opp. to GSF Mot., Ex. 1. The crane operator aboard the Adriatic III communicated with Plaintiff and Symmank via radio due to reduced visibility. The M/V President Tide's position was being maintained by a dynamic positioning system during this operation.

During this operation, Plaintiff and Symmank were both positioned on the stern deck of the M/V President Tide. They would receive the drill pipe in bundles that were secured by lifting slings that were attached to the boom of the crane on the jack-up rig. In order to reach a bundle, the Plaintiff would step up onto the layer of drill pipe that had already been lowered onto the deck of the ship to grab the tag line attached to the bundle that was being transferred. Plaintiff would then step back down approximately 18-20 inches to the deck. Plaintiff and Symmank had been performing this operation without incident for about two and a half hours until the alleged injury occurred. Plaintiff had stepped up onto the layer of pipe to retrieve a bundle onto the M/V President Tide. As he stepped down, a wave unexpectedly struck the M/V President Tide, causing the vessel to quickly rise. This abrupt elevation of the ship caused

Plaintiff's foot to strike the deck forcefully, allegedly resulting in injuries to the Plaintiff's foot, back and neck.

## II.  ANALYSIS

This case arises under this Court's admiralty jurisdiction, 28 U.S.C. § 1333.  Before the Court are two motions for summary judgment and a joint motion in limine.  The Court will address first the motions for summary judgment.

### A.  Summary Judgment

Summary judgment may be granted pursuant to Federal Rule of Civil Procedure 56 "when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law."  *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 248 (5th Cir. 2008).  "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008); *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir. 2008) ("Fact issues are viewed in the light most favorable to the nonmovant.").  "Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial."  *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see Bilbe v. Belsom*, 530 F.3d 314, 315 (5th Cir. 2008) (citing *TIG Ins. Co.*).

Defendants Tidewater and GSF base their motions for summary judgment on substantially the same bases. They allege that no issues of material fact are present here. They assert that all parties agree that the waves were, at a maximum, eight feet in height. Tidewater S.J. Mot. at 3-4. Defendants claim that, under settled Fifth Circuit law, such conditions are not unsafe, and therefore Tidewater and GSF acted reasonably. *Id.* at 11. Any dispute of these conditions by Plaintiff's expert, David Barnes, is not based on actual facts but rather speculative opinion, and should not be relied upon. *Id.* at 12. They also note that the Plaintiff admitted to be experienced in the backloading operation. It was his decision to step on the stacks of drill pipe in order to reach the tag line, whereas Plaintiff alternatively could have instructed the crane operator to lower the bundles to a point that could be more easily reached. *Id.* at 14. Defendants also argue that Plaintiff had the authority to stop the operation if he deemed the conditions unsafe. *Id.* at 13.

Plaintiff makes two arguments in opposition. First, he notes that the Defendants made substantially the same arguments in a prior motion for summary judgment while this case was pending before Judge G. Thomas Porteous of this Court. Judge Porteous denied summary judgment in two orders dated July 13, 2007 (Rec. Docs. 54, 55) prior to the case's transfer to the undersigned judge. Accordingly, Plaintiff asserts that this motion has already been decided and the present motion should be disregarded as an untimely motion for reconsideration. Opp. to Tidewater Mot. at 2. Plaintiff also claims that issues of material fact still exist regarding the conditions during the loading process and the safety of those conditions. Plaintiff explains that his expert witness disputes the condition of the sea at the time, stating that 12-18 foot waves were possible during the operation. *Id.* at 4. He notes also that it was raining, a factor that

complicates the determination of whether the conditions were safe. *Id.* at 5. Moreover, Plaintiff argues that other crewmembers, such as the relief captain on the M/V President Tide, had the duty to prevent crewmembers from stepping onto the piping in order to unload the drill pipe bundles, and that this and other such acts of negligence also create issues of fact that preclude summary judgment. *Id.* at 6.

The law of the case doctrine states that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896-97 (5th Cir. 2006) (citations omitted). This doctrine does not bind a court; instead, "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1424 (5th Cir. 1995) ("[T]he law of the case doctrine is a discretionary rule of practice which does not limit the *power* of the court to revisit a legal issue.") (emphasis in original). As Judge Porteous' decision is not an appellate ruling, this Court is not necessarily bound by his opinion on these issues. However, simply because Judge Porteous' decision is not binding on this Court does not mean that it will be ignored. As observed by courts and commentators alike, the interests of comity and uniformity in decision-making instruct that judges of the same or coordinate courts should respect their colleagues' prior decisions in the same case. *See In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 571 (N.D. Cal. 1981) ("As a rule, the various judges who sit in the same court should not attempt to overrule the decisions of each other[.] This rule is premised upon principles of comity and uniformity, and the need to preserve the orderly functioning of the judicial process. But it does not raise an absolute bar to

5

reexamining questions previously determined."); 18B Charles Alan Wright, Arthur R. Miler & Edward H. Cooper, Federal Practice and Procedure § 4478.4 (2008) (noting that subsequent courts give "special deference" to prior courts "that arises from comity, the desire to avoid strategic changes of court to reargue lost positions, and the need to avoid protracted jurisdictional disputes."). This Court is particularly persuaded to follow a prior ruling where the case involves the same parties and controversy, the parties have already taken the opportunity to fully litigate these motions, and Judge Porteous issued an order denying the motions. *See In re Katrina Canal Breaches Consol. Litig.*, Civ. A. No. 05-4182, 2008 WL 5132840, at *2 (E.D. La. Dec. 1, 2008) (Duval, J.) (holding that deferring to prior judge's opinion would be improper where that previous decision concerned different parties and the prior judge did not definitively rule on the issue at hand). Therefore, this Court will not revisit Judge Porteous' rulings, and accordingly deny the motions for summary judgment.[2]

---

[2]The Court notes that Defendants assert, "The Fifth Circuit has established that it is not negligent, but reasonable, for operations to be performed in the Gulf of Mexico in six to eight foot seas." Tidewater S.J. Mot. at 9. Defendants accordingly claim that summary judgment is appropriate considering that there is little to no dispute that the waves were no more than eight feet high at the time of the incident. *Id.* Defendants' assertion, however, is plainly wrong. The Fifth Circuit has not held that, as a matter of law, performing any ocean operation in six to eight foot seas is not unreasonable. Instead, relevant case law points to different conclusions regarding the reasonableness of sea operations, all depending on the particular conditions and operation to be performed. *See Hebron v. Union Oil Co. of Cal.*, 634 F.2d 245, 246 (5th Cir. 1981) (seas of six to eight feet found to be "moderately rought, but not necessarily dangerous for loading and unloading equipment"); *Hodgen v. Forest Oil Corp.*, 862 F. Supp. 1552, 1556 (W.D. La. 1994) (finding time charterer negligent where it ordered a swing-rope transfer to be performed in 7 to 9 foot seas). Considering the procedural posture of this case as summary judgment, the much more prudent route is to allow this issue to be decided by the factfinder. *See Simms v. Oceaneering Int'l, Inc.*, Civ. A. No. 04-1298, 2005 WL 267570, at *2 (E.D. La. Feb. 1, 2005) (Vance, J.) (finding issue of fact precluding summary judgment concerning whether vessel owner should have suspended food preparation in rough seas that led to ship's cook's injury); *Champagne v. Tetra Applied Techs. Inc.*, No. Civ. A. G-05-299, 2005 WL 3478171, at *5 (S.D. Tex. Dec. 20, 2005) ("A review of the case law reveals that there are no bright lines, and the

**B. Motion to Exclude Expert Testimony**

Defendants have also filed a motion to exclude the expert testimony of Captain John Manders (Rec. Docs. 71, 74). They assert that Captain Manders' opinions regarding weather conditions and the causal relationship between the weather and plaintiffs' alleged injury should be excluded because these are opinions regarding fact issues that are better left to the jury. Expert Mot. at 4. Plaintiff opposes the Defendants' motions on the grounds that Captain Manders' testimony will be helpful insofar as it will provide the inexperienced juror with insight into the operations of vessels in rough weather conditions and the relevant regulations that guide ship operation. Expert Opp. at 2. Notably, Judge Porteous also addressed a similar motion made by the Defendants in which they sought exclusion of Captain Manders' expert testimony. Judge Porteous denied the motion, finding that Captain Manders' proffered testimony went beyond the safety of the weather conditions to include opinions on the performance of the crane operator and captain. (Rec. Doc. 58). In the present motion, Defendants assert that they do not seek to overturn Judge Porteous' prior decision. Instead, they seek to exclude specific portions of Manders' proposed testimony: "that the weather conditions caused [Plaintiff's] alleged injury, that the weather conditions were unsafe to lower bundles of pipe down to the vessel, and that Tidewater's Captain Wilson should have realized the weather had deteriorated and should have shut down the operations." Expert Mot. at 5.

Federal Rule of Evidence 702 permits an expert witness to testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence

---

Court finds that the inquiry as to the weather and sea conditions and the impact of those conditions on vessels and platforms operating in the Gulf of Mexico involves questions and inquiries of fact, not law.").

or to determine a fact in issue." Fed. R. Evid. 702.  The expert witness may testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*  "*Daubert v. Merrell Dow Pharmaceuticals, Inc.* [509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)] established the baseline criteria for scientific expert testimony; *Kumho Tire Co. v. Carmichael* [526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)] extended *Daubert* to all forms of expert testimony; and these principles apply in admiralty matters." *Stolt Achievement, Ltd. v. DREDGE B.E. LINDHOLM*, 447 F.3d 360, 366 (5th Cir. 2006) (citing *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 48-50 (2d Cir. 2004); *Rothfos Corp. v. M/V NUEVO LEON,* 123 F. Supp. 2d 362, 371-72 (S.D. Tex. 2000)).  "In addition, *Kumho Tire* recognized that experts may testify on the basis of their own 'personal knowledge or experience' and refused to hold that the *Daubert* factors must be addressed in every case, given the wide variety of experts and issues that may come before the district courts." *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 149, 119 S.Ct. 1167).

     As a preliminary matter, despite Defendants' assertions to the contrary, it does appear that a significant portion of this motion has already been adequately addressed in Judge Porteous' prior ruling.  Judge Porteous has ruled that Captain Manders can testify to whether the weather conditions were unsafe to perform this particular operation, and whether the captain of the vessel should have shut down operations in light of those conditions.  To evaluate these issues, the jury will require information regarding the process of loading drill pipe from a jack-up rig to another vessel, the impact that rough weather may have on that specific operation and the specific vessel that the Plaintiff was aboard, and what kinds of considerations (including laws

and regulations) that must be weighed by a captain in deciding whether to cease an operation.[3] This Court finds that such expertise may be helpful to the lay juror with little experience in such marine operations, and accordingly there is no reason to modify Judge Porteous' ruling here. *See Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 361 (3d Cir. 1998) (reversing verdict finding tug captain negligent because "the question whether [tug captain] was negligent in failing to change course and maneuver the vessels shoreward [during a storm] or in his decision not to leave the notch earlier was beyond the common knowledge possessed by the members of the jury. These decisions require a knowledge of the navigation and operation of an ocean going tug and barge in bad weather.").

As to the issue of causation, Judge Porteous did not explicitly rule on the admissibility of that evidence. Because Defendants sought to exclude Captain Manders' testimony *in toto*, Judge Porteous held that Manders' testimony went into clearly expert areas well beyond causation. In

---

[3]The Court recognizes that the Fifth Circuit finds the need for such expert testimony to be a close question in cases such as these. In *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990), the Fifth Circuit affirmed the exclusion of an expert who was to testify "whether it was reasonable for an employer to instruct his employee to manually move equipment on the deck of a boat during heavy seas," whether the cargo had been improperly stowed, and whether diesel fuel on the deck had made the deck slippery. The court reasoned that such expert testimony would be unnecessary because the jurors needed only "their common experience and knowledge" to appropriate assess the situation. *Id.* However, the *Peters* court distinguished another Fifth Circuit case, *Smith v United Gas Pipeline Co.*, 857 F.2d 1471 (5th Cir. 1988), in which that court reversed the district court's exclusion of an expert witness on marine operations. The *Peters* court reasoned that expert testimony was appropriate in *Smith* because that case was more complicated. *Smith* required the jury to evaluate "the reasonableness of a ship-to-ship transfer of machinery during rough seas," "the reasonableness of using a ship's crane equipped with a 'headache ball' and a shackle without a 'tag line' while the two ships were stern-to-stern in heavy seas, taking into account the backwash caused by the propellers of both vessels." *Peters*, 898 F.2d at 450. This Court is persuaded to permit Captain Manders' testimony in light of the fact that the present case concerns the more technical operation of a transfer of drill pipe between a jack-up rig and a supply vessel using a crane and tag lines in the midst of significant swells.

the present motion, however, Defendants seek to exclude from Manders' testimony the specific issue of whether the weather and ocean conditions caused Plaintiff's injury. This issue appears to be squarely within the ken of the average juror, making expert opinion here unnecessary. *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 89 (2d Cir. 2006) (noting "expert testimony is usually necessary to establish a causal connection between an injury and its source unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile.") (internal quotation marks and citation omitted)); *Wagner v. Bay City, Tex.*, 227 F.3d 316, 320 n.3 (5th Cir. 2000) (finding expert testimony unnecessary to prove causation where "common sense compels the conclusion" that victim stopped breathing because police used pepper spray on him and repeatedly pushed him to the ground). Once the jurors are provided with information on the specific operation that was being conducted, the weather conditions, and how the particular vessels here would behave in those conditions, they will be able to determine what caused Plaintiff's alleged injury. Accordingly, Captain Manders' expert opinion on the cause of Plaintiff's injury will be excluded.

**III. CONCLUSION**

**IT IS ORDERED** that the Defendants' Motions for Summary Judgment (Rec. Doc. 72 & 73) are **DENIED;** and

**IT IS FURTHER ORDERED** that the Defendants' Motions to Exclude Expert Testimony (Rec. Docs. 71 & 74) are **GRANTED IN PART AND DENIED IN PART.** Captain Manders will be precluded from testifying regarding causation; otherwise, he may testify as proposed.

New Orleans, Louisiana, this ___15th___ day of December, 2008.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**